IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MICHAEL BURNS**,

**Plaintiff,**

**v.**

**ST. CLAIR COUNTY
HOUSING AUTHORITY,**

**Defendant.**                                               **No. 08-0258-DRH**

<u>**MEMORANDUM and ORDER**</u>

**HERNDON, Chief Judge:**

### I. <u>Introduction and Background</u>

Now before the Court is Defendant's motion for summary judgment (Doc. 34). Defendant moves for summary judgment arguing that Plaintiff has failed to provide any evidence of discrimination or of constructive discharge. Plaintiff opposes the motion (Doc. 40). Based on the pleadings, the applicable law and the following, the Court denies the motion.

On April 4, 2008, Michael Burns and Debra Kenton filed suit against their former employer, St. Clair County Housing Authority ("Housing Authority"), alleging race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and 42 U.S.C. § 1981 (Doc. 1).[1] Specifically, Burns alleges that the

---

[1] On March 25, 2009, Magistrate Judge Philip M. Frazier held a settlement conference and Kenton's case settled (Doc. 38).

Housing Authority failed and refused to promote Burns to several director positions because of his race, African American. Burns also alleges that he was constructively discharged because of his race.

## II. Facts

The Housing Authority is a municipal corporation that administers housing assistance programs in St. Clair County, Illinois. The Housing Authority is controlled by a five-member Board of Commissioners. An Executive Director, who is appointed by the Board, is responsible for the day to day management of the Housing Authority. The current Executive Director is David Wagner. Wagner has held that position since November 1989. Wagner is caucasian.

Burns began working as a Property Manager for the Housing Authority in 1988. At that time, Burns reported directly to Perce Dace, the Director of Property Management. Sometime in 1990, Dace resigned as Director of Property Management. At that time, Burns informed Wagner that he had an interest in the position of Director of Property Management. Wagner selected Larry McLean for the position. Thereafter, Burns was promoted to Operations Supervisor. As Operations Supervisor, Burns supervised three to four Property Managers and developed screening criteria for public housing applicants. He reported directly to McLean.

In 1993, Burns title changed to Resident Programs Coordinator. As Resident Programs Coordinator, Burns was responsible for working with groups to develop their interests in seeking employment or business opportunities. His duties included writing grants, administering contracts, and assisting residents with the

development of business plans. Burns still reported to McLean.

From March 2001 to September 2006, Burns held the position of Area Supervisor. His responsibilities included overseeing the management of four different apartment complexes and supervising at least four individuals. Again in this position, he reported to McLean.

During 2005 and 2006, the Housing Authority faced some financial struggles, so it offered an early retirement program to many of its employees. As a result of the early retirement program, the following positions became available: the Administrative Director; the Director of Development and Maintenance; Director of Finance; and the Director of Programs and Leasing.

In February 2006, the Director of Finance position became available when Jim Blackman retired. The Housing Authority did not post an opening for this position. Wagner recommended Nancy Schmidt, a Caucasian woman, for the Director of Finance. She received the promotion. Schmidt's previous position was an accountant. She was the only person considered for the job.

In 2006, the Administrative Director's position opened when Michael Morris retired.[2] At some point in 2005 or 2006, Burns informed Wagner the he was interested in Administrative Director's position. Wagner told Burns that he would take his interest into consideration. In March 2006, Morris had emergency heart surgery and did not return to work on a full-time basis. Maureen Richter, then the

---

[2]Morris announced his intent to retire in 2005.

Purchasing Officer, voluntarily filled in for Morris temporarily while he was on medical leave.  When Morris's retirement became official, Wagner recommend Richter for the Administrative Director position.  The Housing Authority did not post an opening for the Administrative Director position.  Wagner did not have any discussions with Burns about the position.  Wagner did not consider anyone other than Richter for the position because he thought that she was the most logical choice.  Richter is a Caucasian woman.

In May 2006, the Director of Development and Maintenance position became open with the retirement of Tony Vecera.  After, Vecera decided to retire, the Housing Authority separated his job into two positions: Director of Maintenance and Director of Technical Services.  The Housing Authority did not post openings for these positions.  These positions were filled by two Caucasian employees: David Wright, Director of Technical Services and Keith Hausman as Director of Maintenance.  No one else was considered for these positions.

In April 2006, the Director of Programs and Leasing, Effie Smith, retired.  Prior to Smith's retirement, Wagner decided to allow McLean to take over the responsibilities of the Programs and Leasing Department in addition to his responsibilities as the Director of Property Management.  Further, the Housing Authority gave McLean secondary responsibilities for all of the other departments and his title was changed to Deputy Director.  The Deputy Director was a newly created position. The Housing Authority did not post an opening for Deputy Director job and no one else was considered for this job.

At the time of the filling of the Director positions, the Housing Authority personnel policy regarding promotions stated that "[t]he Executive Director shall recommend to the Commissioners the best qualified personnel for the filling of all Agency positions." It further states that "[a]ll Regular full-time status employees may be considered for promotions within the Agency" and that "[j]ob openings will routinely be posted on bulletin boards for three working days." Burns was a regular full-time status employee.

On June 1, 2006, the Housing Authority announced its decisions regarding employment as to the following positions: Deputy Director; Director of Technical Services; Director of Maintenance and the Administrator Director. Burns did not receive any of these jobs. Thereafter on September 6, 2006, Burns informed the Housing Authority that he was resigning.

### III. Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. Proc. 56(c)**. A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. **Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994)**. The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by

specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial.  **Fed. R. Civ. Proc. 56(e);** ***Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)**.  In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party.  ***Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)**.

This standard should be applied "with added rigor" in employment discrimination cases, in which intent and credibility are crucial issues.  ***Webb v. Clyde Choate Mental Health and Development Center*, 230 F.3d 991, 997 (7th Cir. 2000);  *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *King v. Preferred Technical Group, Inc.*, 166 F.3d 887, 890 (7th Cir. 1999)**.  This standard reflects pronouncements that in employment discrimination cases, which often involve issues of motive and intent, summary judgment must be approached with caution.  ***Huhn v. Koering Co.*, 718 F.2d 239, 242 (7th Cir. 1983)**.  *Huhn* relied on an earlier case which recognized that, although summary judgment is improper in employment discrimination cases which involve "weighing of conflicting indications of motive and intent,"where a plaintiff has no evidence of discriminatory motive to "put on the scales for weighing," summary judgment *is* appropriate.  ***Id.***

### IV. <u>Analysis</u>[3]

**Failure to Promote**

An employee can support a Title VII claim for failure to promote either directly or indirectly. ***See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).** Burns has not offered any evidence of direct racial discrimination, and thus he proceeds under the burden shifting method. Under the indirect method, the employee bears the initial burden of establishing a prima facie case of race discrimination. To establish a prima facie case of race discrimination in a failure to promote claim, Burns must establish, by a preponderance of the evidence, that he is a member of a protected class; he is qualified for the position; he was rejected for the position; and the position was given to a person outside the protected class who was similarly or less qualified than he. ***Jackson v. City of Chicago*, 552 F.3d 619, 622 (7th Cir. 2009)(citing *Jordan v. City of Gary, Ind.*, 396 F.3d 825 (7th Cir. 2008))**.

If the employee establishes the prima facie case, then "the burden shifts to the [employer] to articulate a legitimate, nondiscriminatory reason for [its] action, 'which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" ***Brown v. Illinois Dept. of Natural Resources*, 499 F.3d 675, 681 (7th Cir. 2007)(quoting**

---

[3]Burns brought claims under both Title VII and § 1981. These claims are addressed under the same standard and need not be considered separately. ***See Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004)**.

***Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001)(internal citation omitted)).** If the employer articulates nondiscriminatory reasons for its actions, then the employee "resumes h[is] original burden of proof and must establish by a preponderance of the evidence that the [employer's] proffered reasons are pretextual." ***Id.* at 681-82 (quoting *Johnson*, 260 F.3d at 732)(internal citation omitted)**.

First, Defendant argues that Burns does not meet the second and fourth elements because he was neither qualified for either the Administrative Director or the Deputy Director position nor did he apply for either of those positions.[4] Further, the Housing Authority argues that it has shown that its reasons were not pretextual. Burns disagrees and contends that he was qualified for both positions, that he did apply for the Administrative Director position, that he was not required to apply for the job of the Deputy Director as the Housing Authority did not post the position and that the Housing Authority's reasons are pretextual. The Court turns now to address the Administrative Director position.

As to the Administrative Director position, the Court finds that Burns has established a prima facie case. The evidence shows that Burns expressed an interest in this position to Wagner, that Wagner told him that his interest would be considered and that Burns never heard back from Wagner regarding this position.

---

[4] The Housing Authority does not dispute the first and third elements. Further, Burns addressed only the Administrative Director and Deputy Director positions under his failure to promote claims. Thus, the Court too considers only these positions as to his failure to promote claims.

Thus, it is clear that Burns applied for the job. Further, the evidence reveals Burns was qualified for the job. At the time the position was filled, Burns had been employed by the Housing Authority for 18 years, possessed a master's degree in real estate management and had previous experience as a supervisor and as an office manager of a real estate company. Furthermore, the evidence reveals that Burns was at least as qualified, if not more qualified, as Richter, who received the promotion.

The Housing Authority contends that its reason for hiring Richter was non-discriminatory in that Richter was already in the job, earning less money than Burns and thus, there was no need "to upset the apple cart." Burns responds that the Housing Authority's reasons can be considered pretextual as the Housing Authority did not follow its own procedures in filling this position. The Court agrees with Burns. The evidence reveals that the Housing Authority did not follow is own personnel policy with regards to the hiring procedures by not posting the position. The failure to follow employment procedures can show evidence of pretext. "This systematic abandonment of its hiring policies is circumstantial evidence of discrimination." ***Rudin v. Lincoln Land Comm. College*, 420 F.3d 712, 723 (7th Cir. 2005); *Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424, 427 (7th Cir. 1992)**. Clearly, material issues of fact are present as to Burns' failure to promote claims regarding the Administrative Director position. Thus, the Court denies the Housing Authority's motion.

Further, the Court finds that it need not address the Deputy Director

position.  As Burns points out in his response, the Housing Authority did not argue the merits of Burns' claims as to this position in its motion for summary judgment.  The Court turns now to the constructive discharge claims.

**Constructive Discharge**

Constructive discharge occurs when a plaintiff shows that he was forced to resign because his working conditions, from the standpoint of a reasonable employee, had become unbearable. ***Fischer v. Avande, Inc.* 519 F.3d 393, 408-09 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002))**. Constructive discharge can take two different forms. ***Id.* at 409**.  Under the first approach, the plaintiff must demonstrate a discriminatory work environment even more egregious than the high standard for a hostile work environment.  ***Id.***  Under the second approach, when an employer acts in a manner that communicates to a reasonable employee that he will be terminated, and then the plaintiff resigns, the employer's conduct may amount to a constructive discharge.  ***Id.***  With the second approach, a constructive discharge also occurs if, based on the employer's actions, the handwriting was on the wall and the axe was about to fall.  ***Id.***

The Housing Authority maintains that it is undisputed that Burns voluntarily resigned from its employment and accepted a higher paying position at the Downtown Children's Center.  The Housing Authority argues that under the facts of this case Burns cannot show that the working conditions were so egregious that

he resigned or that the employment decisions were made with the specific intention of causing him to resign as there is no evidence that the axe was about to fall on Burns.  Burns counters that the Housing Authority's failure to promote him to any of the Director positions that became available in 2006 constituted constructive discharge.  Specifically, Burns maintains that he quit his job after learning that the Housing Authority filled several Director positions with Caucasian employees without considering him for any of those positions.  Further, Burns maintains that he had held several different positions with the Housing Authority and the only way for him to obtain a higher-level position would have been for the Housing Authority to promote him.  At this point, Burns contends that the failure to even consider him for a Director position was a career-ending action.  The Court agrees with Burns.

Based on the circumstances in this case, the Court finds that a question of material fact exists as to whether a reasonable employee would find the conditions Burns experienced so unbearable that he was forced to resign. ***Cf. Cigan v. Chippewa Falls Sch. Dist.,* 388 F.3d 331, 333 (7th Cir.2004) (explaining that employment discrimination suit is not precluded when professional employee is relegated to menial tasks and employer makes it clear that no better treatment can be hoped for**, but finding plaintiff was not constructively discharged where she was not turned out of her office nor given tasks demeaning to her education and accomplishments);** *Fischer,* **519 F.3d at 411 (explaining that plaintiff could perhaps defeat summary judgment by showing that, despite

**seemingly maintaining compensation, position, and responsibilities, transfer set her on "dead-end path towards termination [,]" but finding that by resigning a few weeks after transfer she did not allow ample time to determine dead-end nature of new position**). Thus, the Court denies Defendant's motion for summary judgment on the constructive discharge claim.

### V. Conclusion

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendant's motion for summary judgment (Doc. 34). The Court **DENIES** the motion as to Burns's Title VII and § 1981 claims for failure to promote as to the Administrative Director and Deputy Director positions and constructive discharge. The Court **SET**S this matter for Final Pretrial Conference on Friday, January 15, 2010 at 1:30 p.m. Further, the parties should contact Magistrate Judge Frazier's chambers if another settlement conference would be beneficial.

**IT IS SO ORDERED.**

Signed this 2nd day of October, 2009.

/s/ David R Herndon

**Chief Judge
United States District Court**